UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DWAYNE LESUEUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:11CV1969 HEA |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's request for judicial review under 28 U.S.C. § 405(g) of the final decision of Defendant denying Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq* and Supplemental Security Income (SSI) under Title XVI, 42 U.S.C. §1381, *et seq*. For the reasons set forth below, the Court affirms the Commissioner's denial of Plaintiff's applications.

**Facts and Background**

Plaintiff was 42 years old at the time of the hearing, on March 23, 2010.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

There was a subsequent hearing on August 3, 2010 to receive additional testimony and the report of the consultative examination. He was living alone in an apartment at the time of the hearing. Plaintiff had been receiving unemployment compensation for approximately 10 months as of the hearing date. Plaintiff graduated from highschool. He does not have any college education or vocational or job training. He does not possess a driver's license. Plaintiff appears to have limited employment history. The last employment prior to the hearing was at Barnes Hospital in food prep. Prior to that employment, he was a janitor at Barnes Hospital. Plaintiff has also been employed as a cashier and as a stock person. The ALJ found Plaintiff has no impairment or combination of impairments that meets or equals in severity the requirements of any listed impairment.

At the March 23, 2010 hearing, Plaintiff testified that he lives by himself. Plaintiff testified that he has a tendency to sleep late as well as stay up late. He further testified that he reads the Bible and watches t.v. He does his own household chores of cooking, laundry, dishwashing, and making the bed. He also sweeps and cleans his own floors. Plaintiff naps a lot in the afternoons.

Plaintiff presented his testimony that he has thoughts and tends to stay up late so he doesn't have to deal with the thoughts or with himself. He has no hobbies and has a limited circle of friends. He also testified that he is visited on

occasion by demons or things who manifest themselves and touch him. As of the hearing date he testified these things had been occurring for about a year and a half.

A vocational expert also testified at the March 2010 hearing and at the August 2010 . The VE testified that Plaintiff could perform work that is within medium exertional and nonexertional unskilled level. The Plaintiff can perform his past relevant work as a janitor and hospital food service worker.

Plaintiff's application for social security and supplemental security income benefits under Titles II, 42 U.S.C. §§ 401, *et seq*., and XVI of the Act, 42 U.S.C. § 1381, *et seq*., was initially denied. On August 10 2010, the ALJ issued an unfavorable decision. On September 9, 2011, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

**Standard For Determining Disability**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also *Hurd v. Astrue*, 621 F.3d 734, 738

(8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611. At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a) (4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a) (1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.*. At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id*.; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir.2012).

## ALJ's Decision

Applying the foregoing five-step analysis, the ALJ in this case determined at Step One that Plaintiff had not engaged in substantial gainful activity since June 9, 2009, the application date. At Step Two, the ALJ found that Plaintiff had the following severe impairments: mild recurrent depressive disorder or an adjustment disorder with mixed emotional features. At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or equaled in severity of any impairment listed in 20 CFR Part 404, Subpart P, Appendix 1, (20CFR 416.920(d), 416.925, 416.926.

Prior to Step Four, the ALJ found that Plaintiff had residual functional capacity to perform the physical exertional and nonexertional requirements of work except for doing more than simple, repetitive tasks or having close or frequent contact with coworkers, supervisors, or the general public. He also concluded the plaintiff may be limited to lifting or carrying no more than 25

pounds frequently or more than 50 pounds occasionally.

At Step Four, the ALJ determined that Plaintiff is able to perform past relevant work and the impairments therefore did not prevent him from engaging in work as a janitor or hospital food service worker. The ALJ concluded that Plaintiff was not operating under a disability during the relevant period.

## Standard For Judicial Review

The Court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir.2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir.2008)). "Substantial evidence is 'less than preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir.2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir.2009)). In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.*

(quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir.2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir.2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005)). The Court should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir.2006).

## Discussion

In his appeal of the Commissioner's decision, Plaintiff makes the following arguments: (1) the ALJ erred in discounting Plaintiff's multiple GAF[2] scores of 50 or below; (2) the ALJ erred in holding that the Plaintiff's mental limitations were due to noncompliance; (3) the ALJ erred by failing to accommodate Plaintiff's need for a limited-stress work environment into the RFC; (4) the ALJ erred in using the receipt of unemployment benefits to reduce his credibility without

---

[2] A Global Assessment of Functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 30-32 (4th Ed. Text Revision 2000). A GAF score of 51 to 60 indicates "moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning." A GAF score of 61 to 70 indicates "some mild symptoms . . . or some difficulty in social, occupational, or school functioning. . . but generally functioning pretty well." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th Ed. Text Revision 2000).

looking at the totality of the circumstances; (5) the ALJ did not give sufficient weight to the work record in assessing credibility.

**RFC and Medical Evidence**

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue,* 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p. An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole, including: the objective medical evidence and medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. *See Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984); 20 C.F.R. § 404.1529; SSR 96–7p.

**The ALJ erred in discounting Plaintiff's multiple GAF scores of 50 or below**.

Upon review of the entire record the ALJ fully evaluated and considered the

9

impact of the GAF scores. The ALJ fully considered the scores and found the objective findings in the record were at odds and was consistent with Plaintiff's noncompliance with his treatment plan. Plaintiff was given GAF scores on various occasions but they were unsupported (Tr.13-16, 302,342-44, 348, 355, 362). Upon treating with Hopewell Center Plaintiff was assigned a GAF score of 48 and 50, although there were few abnormal mental status exam findings. The record supports the AlJ finding in this area as the assignment of GAF to the Plaintiff was primarily the result of his subjective reports of symptoms. As such The ALJ properly assessed the value of the GAF assignments. Indeed GAF assignments may assist an ALJ in formulating the RFC but "is not essential to the RFC's accuracy". *Howard v. Commissioner of Social Security*, 276 F. 3d 235, 241 (6th Cir. 2002). The substantial evidence of the record supports the ALJ.

**The ALJ erred in holding that the Plaintiff's mental limitations were due to noncompliance**.

A claimants noncompliance is properly considered by the ALJ in weighing a physician's opinion. *Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir. 2010). As in *Wildman* there is little or no evidence linking Plaintiffs treatment noncompliance to his mental limitations. None of Plaintiff's mental health providers attributed his noncompliance to his mental limitations. (Tr. 298-370). As

the record reflects when he was treated at Hopewell Center in July 2009, he was cooperative and his insight and judgment were good. (Tr. 349-55). In September of 2009 the assessment was the same. The finding of the ALJ was proper.

**The ALJ erred by failing to accommodate Plaintiff's need for a limited-stress work environment into the RFC**.

The ALJ considered Plaintiffs need for a limited-stress work environment by restricting contact with coworkers, supervisors, and the general public. ( Tr. 17, 321). These were the same limitations imposed by Dr. Cass-Prost. Dr. Cass-Prost gave an opinion restricting Plaintiff's environment to one that was less than moderate to high level stress. ( Tr. 17,364). This was accounted for by the limitation of the ALJ in the RFC to simple, repetitive work.

**The ALJ erred in using the receipt of unemployment benefits to reduce his credibility without looking at the totality of the circumstances and the ALJ did not give sufficient weight to the work record in assessing credibility**.

The Plaintiff testified that he had applied for and received unemployment benefits after he stopped working in 2009. At the March 2010 hearing the Plaintiff was still receiving benefits. The application for benefits is indicative of the ability to work and is therefore inconsistent with the claim of disability. *Jernigan v.*

*Sullivan*, 948 F.2d 1070 1074 (8th Cir. 1991); *see, also Black v. Apfel*, 143 F. 3d. 383, 387 (8th Cir. 1998). Likewise, as to credibility relating to his work history, the ALJ concluded that the work record of Plaintiff was inconsistent with asserted claims. He said he had difficulty getting along well with coworkers and supervisors but the record dictates that from 1997 to the near date of onset his employment was regular and productive. (Tr. 15, 42-45, 58, 205, 300-01, 359). "[A]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Heino v. Astrue*, 578 F.3d. 873, 881 (8th Cir. 2009) ). These conclusions were based upon substantial evidence in the record as a whole.

The ALJ determined Plaintiff's RFC based upon all of the relevant evidence, including medical records, observations of treating physicians, and his description of his limitations. As required by *McCoy v. Astrue*, 648 F.3d 605 (8th Cir. 2011); *Pearsall v. Massanari*, 274 F.3d 1211 (8th Cir. 2001); and *Anderson v. Shalala*, 51 F.3d. 777 (8th Cir. 1995), the ALJ articulated the basis for the weight given the evidence of the record and concluded Plaintiff had the RFC to perform a restricted range of medium work with no more than simple, repetitive tasks and no close or frequent contact with coworkers, supervisors, or the general public. (Tr. 14,17). In so finding, the ALJ considered the entire record including Plaintiff's

complaints. He properly concluded there were inconsistencies in his allegations in relation to the record as whole.

The ALJ's findings were clearly based upon the record as a whole. The ALJ summarized Plaintiff's testimony regarding his limitations, the treatment notes, the medical opinions in the record, Plaintiff's representations, and the ALJ's specific credibility findings. The ALJ applied the proper standard to the facts before him and his determination of Plaintiff's RFC is supported by the record as a whole.

## Conclusion

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. The decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is affirmed.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 13th day of February, 2014.

_____
    HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE